# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50666

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: February 12, 2026** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| SAMUEL CHRISTOPHER CARTER, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Roger B. Harris, District Judge.

Judgment of conviction for four counts of lewd conduct with a child under sixteen and one count of sexual abuse of a child under sixteen years of age, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

TRIBE, Chief Judge

Samuel Christopher Carter appeals from his judgment of conviction for four counts of lewd conduct with a child under sixteen and one count of sexual abuse of a child under sixteen years of age. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

A five-year-old child disclosed to her mother that the child's father, Carter, had engaged the child in sexual acts. Eleven days later, and before any medical assessment had taken place, the child was brought to St. Luke's Children at Risk Evaluation Services (CARES) clinic for an interview. The interview was conducted by a licensed master social worker and observed by a nurse practitioner and law enforcement officers through a live feed. Immediately after the

1

interview, the nurse practitioner performed a medical examination, including a physical and genital exam, to assess the child's health and document any trauma.

The State charged Carter with four counts of lewd conduct with a child under sixteen (Idaho Code § 18-1508) and one count of sexual abuse of a child under sixteen years of age (I.C. § 18-1506). At trial, the State moved to admit the video recording of the child's CARES interview. Carter objected, contending that admitting the interview when the child did not testify deprived Carter of his constitutional right to confront witnesses and violated his right to due process. The district court overruled the objection, concluding that the primary purpose of a CARES interview is to "establish the needs and potential for medical--ongoing medical or psychologic treatment" and that admission would not violate Carter's due process rights. The jury found Carter guilty of all counts. Carter appeals.

## II.

## STANDARD OF REVIEW

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Where a defendant claims that his or her right to due process was violated, we defer to the trial court's findings of fact, if supported by substantial evidence. *State v. Smith*, 135 Idaho 712, 720, 23 P.3d 786, 794 (Ct. App. 2001). However, we freely review the application of constitutional principles to those facts found. *Id.*

## III.

## ANALYSIS

Carter argues the district court erred by admitting the recording of the CARES interview when the child did not testify at trial because admitting the interview deprived Carter of a fair opportunity to confront and challenge the evidence against him and because the interview was testimonial in nature and therefore inadmissible. The State responds that the district court acted within its discretion because the interview was conducted primarily for medical and protective

2

purposes and that admission of the interview did not render the trial fundamentally unfair. We hold that Carter has failed to show that the district court erred in admitting the CARES interview.[1]

The right to confront adverse witnesses is a fundamental component of due process, and although confrontation issues are often analyzed under the Sixth Amendment's testimonial framework, that framework ultimately serves the broader due process goal of ensuring fairness and reliability in criminal trials. *Crawford v. Washington*, 541 U.S. 36 (2004). The Confrontation Clause of the Sixth Amendment prohibits admission of testimonial statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine. *Id.* at 51. Statements are testimonial when the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Michigan v. Bryant*, 562 U.S. 344, 356 (2011); *Davis v. Washington*, 547 U.S. 813, 822 (2006). By contrast, statements made to resolve an ongoing emergency and ensure safety are generally non-testimonial. *Ohio v. Clark*, 576 U.S. 237, 246-48 (2015). The inquiry turns on the objective purpose of the encounter, based upon the totality of the circumstances. *State v. Parsons*, 173 Idaho 435, 448-49, 543 P.3d 465, 478-79 (2024). Thus, whether a statement is testimonial remains relevant to our due process inquiry because testimonial characteristics may bear on the fairness of admitting such evidence.

At trial, Carter objected to the admission of the CARES interview on constitutional grounds, arguing that the presence of law enforcement observers, the structured and forensic nature of the questioning, the absence of an immediate medical emergency, and the absence of the child's testimony at trial rendered the recording testimonial and unfairly prejudicial. Carter asserted that the interviewer followed a standardized protocol designed to document potential abuse for investigative purposes rather than to diagnose or treat the child. The district court overruled the objection, finding that the CARES interview was conducted as part of a medical protocol and that its purpose was to obtain information necessary to guide the medical examination that immediately followed and not to develop evidence for prosecution. The district court determined that the nurse

---

[1] Carter also maintains that the State will be unable to show that any alleged error in admitting the interview was harmless. The State responds that Carter has not demonstrated error because the interview here was conducted primarily for medical and protective purposes, not to establish evidence for prosecution. Because we hold that Carter has failed to show that a constitutional error occurred, we do not address his harmless-error argument.

practitioner observed the interview in real time and immediately conducted a physical examination based on the information obtained.[2]  The district court concluded that the interview's medical and protective purpose, together with the reliability of the circumstances, supported the admission of the interview without violating Carter's constitutional rights.

On appeal, Carter argues that the interview was testimonial and unreliable.  Carter relies on *Parsons*, asserting that the forensic format, the involvement of law enforcement, and the absence of an active emergency render the CARES interview testimonial.  He further argues that, because the child was already in her mother's custody at the time of the interview, no continuing threat to the child's safety existed.  Carter's arguments are unpersuasive.

In *Parsons*, the Idaho Supreme Court held that a CARES interview of a five-year-old child was testimonial where the evidence showed no ongoing emergency or medical need.  *Parsons*, 173 Idaho at 446, 543 P.3d at 476.  There, the child had already been examined by an emergency room physician immediately following disclosure, treated for an infection, and removed from the alleged abuser's home.  The subsequent CARES interview occurred nearly a month later.  The Court concluded that "there [was] simply no evidence that [the child's] CARES interview was part of an ongoing emergency or that she was at risk of imminent harm" and that "the totality of the circumstances shows that the primary purpose of eliciting [the child's] statements during the first CARES interview was to establish or prove past events potentially relevant to later criminal prosecution rather than to provide medical care, as the State contends."  *Id*. at 448-49, 543 P.3d at 478-79.

Contrary to Carter's argument, the holding in *Parsons* does not support his assertions.  Unlike in *Parsons*, the child here had not received any medical evaluation before the CARES interview, nor had a medical professional assessed whether the child faced physical or psychological trauma.  The interview occurred only eleven days after disclosure, while Carter still retained custodial rights.  Law enforcement advised the child's mother that she could temporarily

---

[2]     We acknowledge that the district court misspoke when it described the interviewer as a nurse or medical professional.  The record shows the interview was conducted by a licensed master social worker.  That misstatement, however, is immaterial.  The interview occurred in a medical setting, was contemporaneously observed by a nurse practitioner, and directly guided a subsequent medical examination.

4

keep the child in mother's care during the investigation, but no judicial order had modified custody. Thus, the child's safety and welfare remained unresolved. These circumstances resemble the "ongoing emergency" described in *Clark*, 576 U.S. at 246-47, where adults sought information primarily to protect a child from immediate harm.

Here, unlike in *Parsons*, the CARES interview was integrated into a coordinated medical process. The nurse practitioner testified that the interview provided the "history of present illness" and was "the most important piece" of the nurse practitioner's medical evaluation. The interview's findings shaped the subsequent physical exam, which checked for injuries and reassured the child about her health. This record demonstrates that the interview was part of an ongoing medical assessment, not an isolated forensic exercise. By contrast, in *Parsons*, the medical portion of the child's examination had been completed twenty-four days before the CARES interview took place, leaving the CARES interview detached from any medical purpose. The *Parsons* Court found no evidence that the interviewer sought to inform diagnosis or treatment, which supported its conclusion that the questioning was primarily investigative. *Parsons*, 173 Idaho at 446-47, 543 P.3d at 476-77. Here, the opposite is true: the interview's integration with the medical evaluation underscored its protective and diagnostic purpose.

The child's age further supports this conclusion. At five years old, she lacked the capacity to appreciate the legal consequences of her statements. The United States Supreme Court has recognized that statements by very young children will rarely, if ever, implicate the Confrontation Clause because they cannot grasp that their words may later be used in court. *Clark*, 576 U.S. at 247-48. Like the child in *Clark*, the child in this case spoke to a trained adult in a clinical setting designed to protect the child's health and safety, not to generate courtroom testimony.

Considering the totality of these circumstances, we agree with the district court's conclusion that the primary purpose of the CARES interview was medical, i.e., to assess the child's immediate health and safety, not to establish or prove past events for prosecution, and its admission did not violate Carter's due process rights.

**IV.**

**CONCLUSION**

The CARES interview in this case was not testimonial because the primary purpose of the interview was to assess the child's health and safety. Therefore, Carter has failed to show that the district court erred in admitting the interview. Accordingly, Carter's judgment of conviction for four counts of lewd conduct with a child under sixteen and one count of sexual abuse of a child under sixteen years of age is affirmed.

Judge HUSKEY and Judge LORELLO, **CONCUR**.